# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| WILLIAM F. WHITE,      )<br>                              )<br>         Plaintiff,           )<br>                              )<br>v.                            )     Case No. CIV-13-227-SPS<br>                              )<br>CAROLYN W. COLVIN,            )<br>Acting Commissioner of the Social )<br>Security Administration,      )<br>                              )<br>         Defendant.          ) | |

## OPINION AND ORDER

The claimant William F. White requests judicial review of a denial of benefits by the Commissioner of the Social Security Administration pursuant to 42 U.S.C. § 405(g). He appeals the Commissioner's decision and asserts that the Administrative Law Judge ("ALJ") erred in determining he was not disabled. For the reasons discussed below, the Commissioner's decision is hereby REVERSED and the case is REMANDED to the ALJ for further proceedings.

### Social Security Law and Standard of Review

Disability under the Social Security Act is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment[.]" 42 U.S.C. § 423(d)(1)(A). A claimant is disabled under the Social Security Act "only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work

which exists in the national economy[.]" *Id*. § 423 (d)(2)(A). Social security regulations implement a five-step sequential process to evaluate a disability claim. *See* 20 C.F.R. §§ 404.1520, 416.920.[1]

Section 405(g) limits the scope of judicial review of the Commissioner's decision to two inquiries: whether the decision was supported by substantial evidence and whether correct legal standards were applied. *See Hawkins v. Chater*, 113 F.3d 1162, 1164 (10th Cir. 1997). Substantial evidence is "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Richardson v. Perales*, 402 U.S. 389, 401 (1971), *quoting Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938); *see also Clifton v. Chater*, 79 F.3d 1007, 1009 (10th Cir. 1996). The Court may not reweigh the evidence or substitute its discretion for the Commissioner's. *See Casias v. Sec'y of Health & Human Svcs.*, 933 F.2d 799, 800 (10th Cir. 1991). But the Court must review the record as a whole, and "[t]he substantiality of evidence must take into account whatever in the record fairly detracts from its weight."

---

[1] Step One requires the claimant to establish that he is not engaged in substantial gainful activity. Step Two requires the claimant to establish that he has a medically severe impairment (or combination of impairments) that significantly limits his ability to do basic work activities. If the claimant *is* engaged in substantial gainful activity, or his impairment *is not* medically severe, disability benefits are denied. If he *does* have a medically severe impairment, it is measured at step three against the listed impairments in 20 C.F.R. Part 404, Subpt. P, App. 1. If the claimant has a listed (or "medically equivalent") impairment, he is regarded as disabled and awarded benefits without further inquiry. Otherwise, the evaluation proceeds to step four, where the claimant must show that he lacks the residual functional capacity ("RFC") to return to his past relevant work. At step five, the burden shifts to the Commissioner to show there is significant work in the national economy that the claimant *can* perform, given his age, education, work experience, and RFC. Disability benefits are denied if the claimant can return to any of his past relevant work or if his RFC does not preclude alternative work. *See generally Williams v. Bowen*, 844 F.2d 748, 750-51 (10th Cir. 1988).

*Universal Camera Corp. v. NLRB*, 340 U.S. 474, 488 (1951); *see also Casias*, 933 F.2d at 800-01.

## Claimant's Background

The claimant was born January 8, 1959, and was fifty-two years old at the time of the most recent administrative hearing (Tr. 478, 1005). He completed high school, and has worked as a machine operator (Tr. 490, 896). The claimant alleges that he has been unable to work since September 22, 1999, due to depression, arthritis in his back, contusions on his hands, headaches, and knee trouble (Tr. 484).

## Procedural History

On March 11, 2003, the claimant applied for disability insurance benefits under Title II of the Social Security Act, 42 U.S.C. §§ 401-434, and for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 1381-85.[2] His applications were denied. ALJ Michael Kirkpatrick conducted an administrative hearing and determined that the claimant was not disabled in a written opinion dated June 25, 2004 (Tr. 166-177). The Appeals Council denied review, but on appeal this Court reversed the decision of the Commissioner in Case No. CIV-05-219-FHS-SPS and remanded the case for further proceedings on September 2007 (Tr. 784-793). The remand order included instructions to further evaluate evidence related to the claimant's

---

[2] The Claimant initially filed applications under Title II and Title XVI on December 10, 1997. ALJ Dewey Stark held an administrative hearing and determined that the claimant was not disabled in a written opinion dated September 21, 1999 (Tr. 12-23). The Appeals Council denied review, but this Court reversed the decision of ALJ Stark in Case No. CIV-00-645-S, and remanded the case for further proceedings (Tr. 214-223). ALJ Kirkpatrick held a supplemental hearing and again determined that the claimant was not disabled in a written opinion dated July 30, 2002 (Tr. 438-450). The claimant did not appeal this decision, and instead filed the applications at issue in the present case.

-3-

severe impairment of Dupuytren's contracture of his hand, including limitations imposed by consultative examiner Dr. Steven Rowlan (Tr. 789-793). On remand, ALJ Michael Kirkpatrick conducted a second administrative hearing and determined that the claimant was not disabled in a written opinion dated July 14, 2008 (Tr. 771-782). The Appeals Council denied review, but this Court again reversed the decision of the Commissioner in Case No. CIV-08-476-SPS, and remanded the case for further proceedings on March 31, 2010. The remand order included instructions to properly consider the claimant's hand impairment of Dupuytren's contracture, by providing a rationale for no longer treating the impairment as severe and "reconsider whether the [impairment] necessitate[s] inclusion of hand limitations in his RFC" (Tr. 914). ALJ Trace Baldwin conducted a third administrative hearing and again determined that the claimant was not disabled in a written opinion dated October 12, 2011 (Tr. 880-898). The Appeals Council again denied review, so ALJ Baldwin's October 2011 opinion is the Commissioner's final decision for purposes of this appeal. *See* 20 C.F.R. §§ 404.981, 416.1481.

## Decision of the Administrative Law Judge

The ALJ made his decision at step five of the sequential evaluation. He found that the claimant had the residual functional capacity (RFC) to perform less than the full range of light work as defined in 20 C.F.R. §§ 404.1567(b) and 416.967(b), *i. e.*, he could lift 20 pounds occasionally or 10 pounds frequently and stand/walk/sit for 6 hours in an 8-hour workday, and had the unlimited ability to push/pull, including the operation of hand/foot controls. He further stated that the claimant could only occasionally stoop, kneel, crouch, and crawl, and must have the option to sit/stand at will (Tr. 887). He

further stated that the claimant had no manipulative, visual, communicative, or environmental limitations, and that he had no further limitations that would prevent him from also performing sedentary work (Tr. 887). The ALJ then concluded that although the claimant could not return to his past relevant work, he was nevertheless not disabled because there was work he could perform, *i. e.*, arcade attendant, mailer, or semiconductor assembler (Tr. 897).

**Review**

The claimant contends that the ALJ erred: (i) by failing to perform a proper RFC analysis, and (ii) by failing to properly evaluate the medical evidence. In support of his second contention, the claimant asserts that the ALJ once again failed to properly evaluate the medical evidence related to his Dupuytren's contracture, and the Court agrees.

This Court has twice directed the ALJ reviewing this case to properly assess the medical evidence related to the claimant's Dupuytren's contracture of his hands, specifically, the opinions of two consultative examiners and the state physicians who reviewed the record at various times. On April 17, 2002, Dr. Steven Rowlan, M.D., examined the claimant for complaints of back problems and arthritis involving multiple joints, but especially his hands and knees (Tr. 307). On examination, Dr. Rowlan particularly noted the claimant's "Dupuytren's cords extending to the ring and small fingers and I believe a cord that is beginning to develop towards the long finger but none of these produce significant contracture at this point and time" (Tr. 307-308). Radiographs of both hands were normal except for a one to two millimeter metallic

foreign body on the left ring finger (Tr. 308). Dr. Rowlan's impression was that the claimant had: (i) diffuse degenerative arthritis involving lower back and knees; (ii) Dupuytren's conctracture both hands, making grasping difficult, as well as plantar contractions on his feet; (iii) history of depression; and (iv) history of alcohol abuse (in remission) (Tr. 308). Dr. Rowlan then stated that he believed the claimant "does have significant limitations as far as pushing, pulling, climbing, lifting, and grasping of objects" (Tr. 308). On the "Hand/Wrist Sheet" accompanying Dr. Rowlan's evaluation, it appears that the claimant had a full range of motion with both hands, and he stated affirmatively that the claimant could effectively oppose the thumb to the finger tips and manipulate small objects, but that he could not effectively grasp tools such as a hammer due to the Dupuytren's cords (Tr. 311). He also completed a physical RFC assessment, finding that the claimant could perform less than the full range of light work in that he had mild limitations in his upper extremities related to pushing and pulling, due to chronic low back pain and Dupuytren's contractures; that he could occasionally climb, balance, kneel, crouch, crawl, and stoop; that he was limited to occasional in handling, but able to frequently reach all directions, finger, and feel, due to Dupuytren's contractures; and that back pain and heights or climbing were limited by hand grip (Tr. 313-316).

On February 25, 2008, Dr. Gordon B. Strom, Jr., M.D., conducted a second consultative examination of the claimant. With respect to the claimant's hands, he stated that the claimant had "bilateral Dupuytren contractures with well-calloused hands and distal hypertrophic osteoarthropathy, but he can flex and extend his digits with a 4/5 grip

-6-

strength on the left and 5/5 grip strength on the right" (Tr. 829). He concluded that, "It is my impression that he has multiple factors limiting his ability to perform[] work related activities. . . . He does indeed have degenerative joint disease with limited range of motion of his hands, arms and knees . . . His major limitations were due to pain, rather than to joint limitation" (Tr. 829). He, too, completed a "Hand/Wrist Sheet," indicating that the claimant could effectively oppose the thumb to the fingertips and manipulate small objects, but could only effectively grasp tools such as a hammer with pain (Tr. 832). He also completed a physical RFC assessment. With regard to the claimant's use of his hands, Dr. Strom indicated that the claimant could only occasionally reach (overhead and all other), handle, finger, feel, push/pull. He referred to x-ray evidence of arthritis with bilateral Dupuytren's contractures as supporting his assessment (Tr. 836).

On May 15, 2003, a state reviewing physician found that the claimant could perform light work, with unlimited ability to push/pull, limitations to occasional for all postural limitations, and no manipulative limitations (Tr. 557-559).

At the administrative hearing, the ALJ himself stated that it appeared the claimant's Dupuytren's contractures was a severe impairment, and that "I can't find it to be a non-severe impairment and then include it in an RFC" (Tr. 1013-1014). The claimant testified regarding the contractures, pointing out the knots on his hands, and stating that he cannot hold on to things for very long without dropping them, and that it applied to both hands but that the right hand was slightly worse (Tr. 1016-1018). He indicated that the contractures get worse over time, and that he was originally diagnosed in 1994 (Tr. 1019). The ALJ then asked the claimant to see his hands again, noting an

obvious constricture on the left ring finger, and a constricture on his right small finger as well, then questioned the claimant about black on his fingernails. The claimant responded that he had replaced a radiator hose on his pickup truck, and that he had used a ratchet and a socket to remove the hose clamp (Tr. 1025-1026). Noting it was a small socket, the claimant indicated that it took him about thirty minutes total to do the work, and stated, "I found that if I put a socket on there, I can use the the ratchet instead of trying to grip with the screwdriver" (Tr. 1025-1027). A vocational expert also testified at the hearing and in response to questions from the ALJ, the VE indicated that if the claimant had both a sit/stand limitation and was also limited to occasional bilateral manipulation with the hands, there was no work at either the light or sedentary work levels that the claimant could perform (Tr. 1033-1034).

In his written opinion, the ALJ summarized the claimant's testimony as well as the medical record. He determined that the claimant had the severe impairments of degenerative spondylosis of the thoracic and lumbar spine and bilateral internal knee derangement, in addition to the non-severe impairments of Dupuytren's contractures of the hands and feet, headaches, hearing loss, depression NOS, and alcohol dependence in full sustained remission (Tr. 883). At step four, the ALJ dedicated a great deal of time explaining why the claimant's Dupuytren's contractures were a nonsevere impairment. He noted the claimant was diagnosed in 1994, was treated in 1998 at the VA for pain in his hands where the doctor noted the claimant complained of numbness in his fourth and fifth fingers, and that he had callouses on both hands (Tr. 888-889). He found that there was no evidence to support a finding of arthritis in the claimant's hands, and noted that

he had maintained a full range of motion, could effectively oppose his thumbs to his fingertips, and could manipulate small objects (Tr. 890). He then concluded that both Dr. Rowlan and Dr. Strom's opinions were not supported by the medical evidence because range of motion assessments were within normal limits, the claimant's complaints of pain were not credible, the claimant's hands were described as well-calloused in 1998 and 2008, and the claimant had worked on his vehicle. As to the work on the claimant's vehicle, the ALJ himself concluded that the amount of dirt and grime on the claimant's hands was inconsistent with the claimant's report of working on the vehicle thirty minutes total (Tr. 890). He assigned little weight to the opinions of Dr. Rowlan and Dr. Strom, finding both inconsistent with the medical evidence, and that Dr. Strom's examination was also internally inconsistent (Tr. 893-894). He then gave great weight to the state reviewing physician opinion to the extent it conformed to his own RFC assessment, with the addition of a sit/stand at will option (Tr. 894).

"An ALJ must evaluate every medical opinion in the record, although the weight given each opinion will vary according to the relationship between the disability claimant and the medical professional. . . . An ALJ must also consider a series of specific factors in determining what weight to give any medical opinion." *Hamlin v. Barnhart*, 365 F.3d 1208, 1215 (10th Cir. 2004) [internal citation omitted], *citing Goatcher v. United States Department of Health & Human Services*, 52 F.3d 288, 290 (10th Cir. 1995). The pertinent factors include the following: (i) the length of the treatment relationship and the frequency of examination; (ii) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (iii)

the degree to which the physician's opinion is supported by relevant evidence; (iv) consistency between the opinion and the record as a whole; (v) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (vi) other factors brought to the ALJ's attention which tend to support or contradict the opinion. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300-1301 (10th Cir. 2003) [quotation marks omitted], *citing Drapeau v. Massanari*, 255 F.3d 1211, 1213 (10th Cir. 2001). Here, the ALJ provided a thorough summary of both Dr. Strom's and Dr. Rowlan's reports, but nevertheless improperly rejected them. His reasons for assigning the opinions little weight due to "inconsistencies" ignores the fact that they both found the claimant would have difficulty grasping tools such as a hammer, and should be limited to occasional handling (Tr. 311, 315, 832, 836). He thus agreed that the claimant has a medically determinable impairment, but refused to adopt even the most conservative limitations related to manipulative limitations suggested by examining physicians – despite this Court's two previous admonitions to properly address this very issue – nor did he consider it in combination with the claimant's other impairments, as required at step four. *See Langley v. Barnhart*, 373 F.3d 1116, 1121 (10th Cir. 2004) ("The ALJ also improperly rejected Dr. Hjortsvang's opinion based upon his own speculative conclusion that the report was based only on claimant's subjective complaints and was 'an act of courtesy to a patient.' The ALJ had no legal nor evidentiary basis for either of these findings. Nothing in Dr. Hjortsvang's reports indicates he relied only on claimant's subjective complaints or that his report was merely an act of courtesy. 'In choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences

from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and *not due to his or her own credibility judgments, speculation or lay opinion.*'") [emphasis in original], *quoting McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002). *See also Hill v. Astrue*, 289 Fed. Appx. 289, 292 (10th Cir. 2008) ("In determining the claimant's RFC, the ALJ is required to consider the effect of *all* of the claimant's medically determinable impairments, both those he deems 'severe' and those 'not severe.'") [emphasis in original]. The ALJ found it notable that the claimant had callouses and an excessive amount of oil and grime on his hands, but neglected to acknowledge that Dupuytren's contractures themselves form knots, and that the claimant had explained a modification to the tools he used to repair his truck because of his difficulty grasping a screwdriver, instead arbitrarily concluding that the claimant's hand were too dirty and calloused to support his claimed limitations and that he must have been untruthful. *See Hardman v. Barnhart*, 362 F.3d 676, 681 (10th Cir. 2004) (noting that the ALJ may not "pick and choose among medical reports, using portions of evidence favorable to his position while ignoring other evidence."), *citing Switzer v. Heckler*, 742 F.2d 382, 385-386 (7th Cir. 1984) ("Th[e] report is uncontradicted and the Secretary's attempt to use only the portions favorable to her position, while ignoring other parts, is improper.") [citations omitted].

Accordingly, the Commissioner's decision must be reversed and the case remanded to the ALJ for further analysis. On remand, the ALJ should properly evaluate *all* the evidence at *each* stage of the evaluation process. If the ALJ's subsequent analysis

results in any changes to the claimant's RFC, the ALJ should re-determine what work the claimant can perform, if any, and ultimately whether he is disabled.

## Conclusion

In summary, the Court FINDS that correct legal standards were not applied by the ALJ, and the Commissioner's decision is therefore not supported by substantial evidence. The decision of the Commissioner decision is accordingly hereby REVERSED and the case REMANDED for further proceedings consistent herewith.

**DATED** this 17th day of March, 2015.

_____
**STEVEN P. SHREDER**
**UNITED STATES MAGISTRATE JUDGE**